UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 05-CV-4626 (JFB)

———————

FELICIANA BAEZ,

                  Plaintiff,

VERSUS

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

———————

MEMORANDUM AND ORDER
September 19, 2006

———————

JOSEPH F. BIANCO, District Judge:

Plaintiff Feliciana Baez brings this action *pro se* pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3), challenging the final decision of defendant Commissioner of the Social Security Administration (the "Commissioner" and the "SSA," respectively) that Baez was not entitled to Supplemental Security Income ("SSI"). The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), requesting that the Court affirm the Commissioner's findings. For the reasons set forth below, defendant's motion is granted.

I. BACKGROUND AND PROCEDURAL HISTORY[1]

A. Prior Proceedings

On May 5, 2002, Baez filed an application for Supplemental Security Income payments ("SSI") alleging disability due to hypertension, high cholesterol, arthritis and osteoporosis. (Record at 44-46, 62, 109.)[2] The May 5, 2002 claim was denied on June 6, 2002. (*Id.* at 12, 18-22.) On July 15, 2002, Baez requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 29-31.) The ALJ, Marilyn P. Hoppenfeld,

---

[1] The background and procedural history are primarily drawn from the pleadings and the administrative record in this case.

[2] References to "Record" are to the certified administrative record of proceedings related to this case.

considered the matter *de novo* at a hearing held on May 11, 2004. (*Id*. at 172-204.) Baez appeared at the hearing and testified without an attorney. On May 10, 2005, the ALJ issued an opinion finding that Baez was not disabled. (*Id*. at 10-17.) The ALJ's decision became the final decision of the Commissioner on July 29, 2005, when the SSA Appeals Council denied Baez's request for review. (*Id*. at 6-8.)

Baez filed the instant action on September 22, 2005, claiming that her disability began in 2002 and that the ALJ's decision denying benefits was erroneous and contrary to clearly established law.

After describing the plaintiff's background, the Court will review the medical history, followed by the administrative law judge's (the "ALJ") findings.

### B. Plaintiff's Age, Education, and Experience

Baez was born on November 20, 1946 in Santo Domingo, Dominican Republic. (*Id*. at 13, 185.) She has lived in the United States since March 30, 1996, but she has not applied for U.S. Citizenship. (*Id*. at 13.) Baez attended school through the fifth grade. (*Id*. at 68.) Baez is not currently working.

Baez testified that she traveled to Santo Domingo in 2003. (*Id*. at 186.) She also went in 2002 for one and a half months and she testified that she believed she traveled to Santo Domingo in 2001. (*Id*. at 186-87.)

Baez was previously married but had been separated for three years at the time of her hearing. (*Id*. at 189.) She has seven children who were between the ages of approximately thirty-seven and twenty-four at the time of the hearing. (*Id*. at 190.) Only two of her seven children live in the United States. (*Id*.) Baez does not have any difficulty getting along with friends, family, bosses, or others in authority. (*Id*. at 55-56.) She is able to follow instructions and finish what she starts. (*Id*. at 56.)

Baez does not possess a driver's license. (*Id*. at 191.) She takes public transportation. (*Id*. at 53, 191, 196.) Baez is able to go out on her own and during the day, watches television, goes to church, attends appointments and goes to the park. (*Id*. at 51-55.)

Baez previously worked as a perfume packer. (*Id*. at 192-93.) The job required her to stand at an assembly line and place perfume bottles into a box. (*Id*.) Baez did not have to lift anything heavy. (*Id*.) She said that she stopped working at the perfume factory only because of problems with her right arm. (*Id*. at 193.) Baez also worked as a factory cleaner during parts of 2000 and 2001, which required her to stand or stoop for six hours per day. (*Id*. at 63.)

### C. Non-Medical Evidence

Baez claims that she cannot work due to high blood pressure, high cholesterol, arthritis, osteoporosis, and depression. (*Id*. at 62, 194.) Baez uses public transportation and she is able to walk for three blocks, and sit and stand for one-half hour continuously. (*Id*. at 196-97.)

Baez testified that she has arthritis in her right arm and the she cannot make a fist. (*Id*. at 198-199.) Baez testified that she can barely make her bed, that she cannot pick up things because her wrist hurts, and that she has a cyst behind her right knee. (*Id*. at 199.) She also testified that her spine bothers her. (*Id*.)

Baez bathes and dresses daily, takes her medicine, has cereal for lunch, prepares lunch

(though she occasionally burns herself while preparing lunch), and remains in her room. (*Id.* at 201.) Baez brings her laundry to her neighbor, pays someone to clean her room, goes shopping at a grocery store nearby and carries a bag with her left hand. (*Id.* at 201-202.) When Baez travels to the Dominican Republic, she walks to the gate with no luggage other than her purse and papers. (*Id.* at 203.) She does not cook or clean while she is in the Dominican Republic. (*Id.*)

### D. Medical Evidence Submitted at the Hearing

Baez was treated on an outpatient basis at Bellevue Hospital Center ("Bellevue") for hypertension, osteoarthritis, and osteoporosis from approximately November 1999 through October 2001. (*Id.* at 90-101,108.) During that time, Baez's hypertension was generally controlled when she was compliant with her medication. (*Id.* at 93, 98-101.) As of November 1999, Baez had severe osteopenia of the lumbar spine and mild osteopenia in her hip. (*Id.* at 108.) Bellvue's records do not indicate any change in Baez's osteoporisis or osteoarthritis between November 24, 1999 through October 31, 2001. (*Id.* at 90-108.)

In May 2002, Baez was examined on a consultant basis by Dr. Soo Park. (*Id.* at 109-10.) Baez provided Dr. Park with a medical history which included high blood pressure for five years, back and knee pain with arthritis, minor stroke approximately four years prior to the examination, and a previous facial palsy which had been corrected prior to the examination. (*Id*. at 109.) Baez also informed Dr. Park that she was taking 20 mg of Zestril, 10 mg of Norvasc, and 100 mg of Atenolol per day.³ Baez told Dr. Park that she

has experienced back and knee pain, as well as pain while walking. Baez had no history of injury other than arthritis, and she claimed that she had never taken any medicine for the pain other than Ibuprofen. (*Id.*) Baez also reported a history of high cholesterol and claimed that she took medication for cholesterol, but could not remember the name. (*Id.*)

Baez informed Dr. Park that she spent her days performing household chores, taking walks, and watching television. (*Id*. at 109.) She also stated that she never had any job in this country. (*Id*.) In the examination, Dr. Park noted that Baez had a normal range of motion of the upper and lower extremities. (*Id.* at 110.) Her right knee exhibited 100 degrees of flexion and the left knee exhibited 130 degrees of flexion. (*Id.*) Baez's Romberg sign was negative, her peripheral pulsations were intact, and she showed no clubbing, cyanosis, or edema. (*Id*.) She was able to walk on tiptoes and heels. (*Id.*) Baez's gait and station were also normal and she had no difficulty getting on or off the examination table. (*Id.*)

Baez's finger/hand dexterity was intact and she had full use of both hands and arms in dressing and undressing. (*Id.*) Her spine and joints had a full range of motion without deformities, swelling warmth or tenderness. (*Id*.) Baez had no atrophy, no spasm, no subluxation, no contractures, no ankylosis or instability. (*Id.* at 110) Her lumbar spine

---

³ In addition to the medications described, Baez's pharmacy records indicate that she was taking a host of medications at different times during 2002 through 2004, including, but not limited to, Hydrochorhiazide, Monopril, Zocor, Fosinopril Sodium, Asprin, and Ibufprofin for blood pressure and heart-related issues such as cholesterol. (*Id.* at 153-159.) At various points, the record also demonstrates that Baez was taking Celebrex and/or Fosamaz for osteoporosis and that she periodically received medication for allergies and other minor feminine health issues. (*Id.*)

3

evidenced ventral flexion at 60 degrees, dorsiflexion at 20 degrees, and lateral flexion at 30 degrees. (*Id*.) Baez was found alert and oriented times three and her cranial nerves were intact. (*Id*.) Her straight leg raise test was to 60 degrees but her motor sensory and deep tendon reflexes were all normal. (*Id*.) She had intact cerebellar functions and her bilateral knee jerk was 1+. (*Id*.) Finally, with respect to Baez's EKG reading, Dr. Park found that her rhythm was sinus, her atrial rate was 68, ventricular rate was 68, PR interval was 0/16, QRS interval was 0.08, and Axis of -25. (*Id*.) The EKG showed "no evidence of acute ischemia or left ventricular hypertrophy," but did show a "poor progression of R wave in the anterior precordial lead" as well as "left axis deviation." (*Id*.)

Dr. Park diagnosed Baez with "[h]igh blood pressure with the history of facial palsy but . . . no residual symptom" and back pain as well as right knee pain with arthritis. (*Id*.) Dr. Park also opined that Baez's prognosis was fair and that she was mildly limited in lifting, bending, waling and standing. (*Id*.)

On May 13, 2002, Baez had a right knee x-ray taken by Dr. Edmond Balinberg, which was negative. (*Id*. at 113.) She also had a chest x-ray taken the same day, which revealed no acute pathology. (*Id*. at 114.)

In September 2002, Baez underwent a mental status examination by a psychiatrist from the Western Queens Consultative Center ("WQCC"), which revealed that she had a depressed mood, and her concentration and recent memory were poor, and her intellectual functioning and remote recall were fair. (*Id*. at 163.) Baez also exhibited delusions of persecution. (*Id*.) However, Baez's speech was spontaneous, her insight was fair, her judgment was intact and her thought process was appropriate. (*Id*.) Baez was diagnosed with Major Depressive Disorder, recurrent, as well as osteoporosis, arthritis, and high cholesterol. (*Id*.) At some point during her treatment at WQCC, Baez was prescribed Zoloft, Ambien, and Zyprexa. (*Id*. at 170-71.)

In November 2004, Baez was discharged from WQCC for failure to attend therapy. (*Id*. at 170-71.) A WQCC therapist stated that Baez failed to keep her psychiatrist appointment, and discontinued therapy without notice, then returned four months later for only two sessions and stopped attending or responding to telephone calls or letters. (*Id*. at 169.) Baez also refused to accept supportive case management services. (*Id*. at 169-70.)

The day before the hearing, Baez met with a psychiatrist, Dr. Goldstein, who prescribed Prozac and Cellebrex. (*Id*. at 196.)

### E. The ALJ's Decision

The ALJ denied Baez's application for SSI benefits in a written opinion dated May 10, 2005. (*Id.* at 10-17.) The ALJ found that Baez had not engaged in any substantial gainful employment since May 5, 2002. (*Id.* at 13.) The ALJ found that Baez's impairments were severe, as defined by the regulations. (*Id.*) However, the ALJ found that her impairments of osteoporosis, hypertension, hyperlipidemia, and alleged depression did not meet or equal the requirements of the listed impairments in the regulation. (*Id.*) The ALJ found that "[a]ny failure to control the claimant's hypertension has been due to her noncompliance with medication." (*Id.* at 15.) As to Baez's alleged depression, the ALJ found that "there was no documentation of any limitations therefrom nor compliance with suggested treatment." (*Id.* at 15.) The ALJ found that Baez's testimony was not supported by substantial medical evidence and the ALJ declined to

4

accept her testimony. (*Id.* at 16.) The ALJ determined that Baez retained the residual functional capacity for a full range of light work finding that she is capable of standing, walking and sitting for six hours in an eight hour day and able to lift ten pounds frequently and twenty pound occasionally. (*Id.*) The ALJ found that her residual functional capacity enabled her to "perform[] her past work as a perfume packer." (*Id.* at 15.)

F. Procedural History

Plaintiff filed a *pro se* complaint in this case on September 22, 2004, asserting that the ALJ's decision denying her disability benefits was erroneous and contrary to the law. The case was assigned to the Honorable Edward Korman. On February 8, 2006, this case was reassigned to this Court. Thereafter, defendant moved for judgment on the pleadings. On September 13, 2006, oral argument was held at plaintiff's request.

II. DISCUSSION

A. Applicable Law

A district court may only set aside a determination by an ALJ which is based upon legal error or not supported by substantial evidence. *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). The Supreme Court has defined "substantial evidence" in Social Security cases as "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotations and citations omitted).

Furthermore, "it is up to the agency, not th[e] court, to weigh the conflicting evidence in the record." *Clark v. Commissioner of Social Security*, 143 F.3d 115, 118 (2d Cir. 1998). If the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, even if there is substantial evidence for the plaintiff's position. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey*, 145 F.3d at 111; *see also Jones*, 949 F.2d at 59 ("the court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a *de novo* review") (quoting *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)).

For purposes of disability insurance eligibility, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the Act unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). The claimant bears the initial burden of showing that his impairment prevents him from returning to his prior type of employment. *Barry*, 675 F.2d at 466-67; *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981). If he meets that burden, the burden shifts to the Secretary to prove the

existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform, considering not only his physical and mental capabilities, but also his age, his education, and his experience and training. *Campbell v. Sec'y of Health and Human Servs.*, 651 F.2d 133, 51 (2d Cir. 1981); *Dousewicz v. Harris*, 646 F.2d 771, 772 (2d Cir. 1981); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

### B. Application

The plaintiff bears the burden of establishing the existence of a disability. *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000). Here, Baez's complaint and opposition to the Commissioner's motion fail to identify any specific testimony or evidence that she believes the ALJ overlooked, unjustly weighed, or otherwise should have considered in making a determination. Rather, in opposing defendant's motion, Baez merely states that she has difficulties that do not allow her to work, including arthritis, high blood pressure, osteoprosis, and high cholesterol. (Pl.'s Aff. in Opp. to Def.'s Mot. (hereinafter "Pl.'s Aff.") at 1.)

The Commissioner has established a five-step procedure for evaluating disability claims:

> 1. If the claimant is currently engaged in substantial gainful employment, she will be found "not disabled."
>
> 2. If the claimant does not suffer from a severe impairment, she will be found not disabled.
>
> 3. If the claimant has a severe impairment that meets or equals an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P, the claimant will be found disabled.
>
> 4. Assuming the claimant does not have a listed impairment, if, considering her residual capacity, the claimant can still perform work she has done in the past (past relevant work) despite a severe impairment, she will be found not disabled.
>
> 5. Finally, if plaintiff cannot return to her past relevant work, the Commissioner will consider the claimant's residual functional capacity, age, education and past work experience permit her to perform other work which exists in significant numbers in the national economy. If she is not able to perform any other work, a finding of disability will be entered. On the other hand, if the claimant can perform other work, she will be found not disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)[4]; *Diaz v. Shalala*, 59 F.3d 307, 311, n.2 (2d Cir. 1995) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)) The Court finds that the ALJ followed the sequential analysis, and adequately developed the record. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a

---

[4] 20 C.F.R. § 416.920(a)(4) provides in part:

> The sequential evaluation process is a series of five "steps" that we follow in set order. If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. We use this residual functional capacity assessment at both steps four and at step five when we evaluate your claim at these steps.

non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record.") (citing *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)); *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999).

Here, the ALJ found that Baez's impairments did not meet or equal an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P. Therefore, the ALJ had to determine whether Baez has the residual functional capacity to perform work she had done in the past. "Plaintiff bears the burden of proving that she does not have the residual functional capacity to perform her past work." *Diaz*, 59 F.3d at 312, n.2 (citing *Berry*, 675 F.2d at 467). A review of the ALJ's findings demonstrates that the record was properly developed,[5] and that the decision was based on substantial evidence.

### 1. Baez is Not Currently Employed

The ALJ found, as to the first step, that Baez had not engaged in any substantial gainful activity since May 5, 2002. (Record at 13, 16.) The ALJ's determination that Baez was not engaged in substantial gainful activity during the relevant time period is not in dispute.

### 2. Baez Does Suffer From Severe Impairments

As to the second step, the ALJ found that Baez has the following severe impairments: osteoporosis, hypertension, hyperlipidemia, and depression. (*Id.* at 16.)

---

[5] The duty to develop the record also includes advising the plaintiff, especially if the plaintiff is *pro se*, of the importance of such evidence. *Echevarria*, 685 F.2d at 755; *Jones v. Apfel*, 66 F. Supp. 2d 518, 524 (S.D.N.Y. 1999).

### 3. Baez's Impairments Do Not Equal the Requirements of 20 C.F.R. § 404.

The ALJ found that Baez's impairments did not meet or equal the requirements of the Listing of Impairments set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1. (*Id.*) The impairments listed in Appendix 1 are those impairments that are "acknowledged by the [Commissioner] to be of sufficient severity to preclude gainful employment." *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995) (quotations omitted). The medical findings support the ALJ's determination that the impairments of osteoporosis, hyperlipidemia, hypertension and depression do not meet or equal the Listing of Impairments set forth in Appendix 1.

Baez was treated approximately monthly at Bellevue Hospital Center for hypertension, osteoarthritis, and osteoporosis from approximately November 1999 through October 2001. (Record at 90-108.) During this time, Baez's hypertension was generally controlled, except when she was not compliant with her medication. (*Id.* at 93, 99-101.) As of November 24, 1999, Baez had severe osteopenia of the lumbar spine and mild osteopenia in her hip. (*Id.* at 108.) Baez, however, testified that she worked in 2000 through 2001, after this condition was diagnosed. (*Id.* at 63, 192-93.) In addition, the records do not indicate that Baez's osteoporosis or osteoarthritis worsened after November 1999. (*Id.* at 90-108.)

The ALJ also considered Dr. Park's consultative examination of Baez in May 2002 which demonstrated the Baez had a normal range of motion in her upper and lower extremities. (*Id.* at 110.) Dr. Park determined that plaintiff was only mildly limited in lifting, bending, walking and standing. (*Id.*) Furthermore, despite allegations of right knee pain, an x-ray

7

demonstrated that there was no evidence of acute fracture, dislocation, or destructive bony lesion and showed that the joint spaces were relatively well-maintained. (*Id.* at 113.) In addition, Lisa Ceglia, M.D. reported that Baez was on appropriate medication for hyperlipidemia and osteoporosis. (*Id*. at 127.)

Only Baez's subjective complaints supported her position that she would not be able to perform her past relevant work. The ALJ is required to "consider all [of a claimant's] symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). The ALJ considered Baez's subjective complaints. However, she determined that Baez's allegations were not credible and were inconsistent with the other evidence in the record. Baez had traveled to the Dominican Republic several times since the alleged onset of her disability and was able to take public transportation. (*Id*. at 186-86, 134, 139, 142.) The ALJ noted that Baez testified she had to stop working due to pain in her right arm, but "the medical evidence did not confirm any severe restrictions in the use of her right arm." (*Id*. at 15.) Furthermore, the ALJ also noted that "[a]lthough [Baez] alleged a depression, there was no documentation of any limitations therefrom nor compliance with suggested treatment." (*Id*. at 15.) Baez had failed to attend therapy sessions, discontinued therapy without notice, refused to accept supportive case management services and did not respond to the Western Queens Consultation Center's telephone calls or letters. (*Id*. 169-70.)

In evaluating her credibility, the ALJ also noted that Baez's testimony regarding her work history were inconsistent with her statements to the consultants that she never worked in this country. (*Id*. at 16, 109.) At the hearing, Baez stated that she worked as a perfume packer and, in one form, Baez wrote that she worked in a factory cutting strings that were loose on clothing that required her to stand or stoop for six hours. (Record at 63.) Furthermore, although Baez testified that she does not perform any household chores, Baez had informed Dr. Park that she did perform household chores. (*Id*. at 109.)

"[W]here a claimant's subjective testimony is rejected, the ALJ must do so explicitly and specifically." *Kleiman v. Barnhart*, No. 03-CV-6035 (GWG), 2005 U.S. Dist. LEXIS 5826, at * 32 (S.D.N.Y. Apr. 8, 2005) (citing *Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988) (where an ALJ rejects witness testimony as not credible, it must set forth the basis for this finding "with sufficient specificity to permit intelligible plenary review of the record"). The ALJ did what was required and rejected Baez's testimony explicitly and specifically. The ALJ discussed Baez's subjective complaints in the context of the medical record as a whole, as well as Baez's own testimony regarding her daily activities. (*Id.* at 15-16.) The ALJ then found that her "testimony is not supported by the substantial medical evidence and not accepted in view of her activities and for the other reasons set forth in the body of this decision." (*Id*. at 16.)

4. Baez Can Perform Work She Has Done in the Past

Finally, at step four, the ALJ found that Baez had retained the residual functional capacity to perform a full range of light work. (*Id*. at 15-16.) Light work requires the ability to lift "no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds." 20 C.F.R. § 416.967(b); *see also* Social Security Ruling 83-10. Light work may also require a good deal of walking or sitting most of the time

with some pushing or pulling of arm or leg controls. *Id*. The ALJ found that, because the exertional requirements of Baez's past work as a perfume packer did not exceed her residual functional capacity, she could return to her past relevant work. Accordingly, the ALJ found that Baez was not disabled.

In Baez's opposition, she does not point to anything in the record that would support her subjective complaints. Rather, in her opposition and at oral argument, Baez discussed medical appointments and medications that have been prescribed subsequent to the date of the ALJ's determination. None of this evidence is relevant to the time frame at issue in this case. "In seeking review of an ALJ's decision, a claimant is afforded the right to submit new and material evidence that relates to the period *on or before* the ALJ's decision." *Gamble v. Barnhart*, No. 02-CV-1126 (GBD), 2004 U.S. Dist. LEXIS 24004, at *9, 100 Soc. Sec. Rep. Service 763 (S.D.N.Y. Nov. 24, 2004) (citing *Perez v. Chater*, 77 F.3d 41, 44-45 (2d Cir. 1996)) (emphasis added); *see also Firpo v. Shalala*, No. 94-CV-3368 (JSM), 1995 U.S. Dist. LEXIS 2524, at *9 (S.D.N.Y. Feb. 24, 1995) ("This Court's reviewing authority is limited by the timeframe of plaintiff's application, delineated by the alleged onset of plaintiff's disability and the Secretary's decision regarding the plaintiff's eligibility as a result of that disability."). Specifically, Baez submits two letters from the City of New York directing her to attend an appointment with WeCare on April 26, 2006, and May 5, 2006. Baez also attaches a medical form filled out by a physician that, though undated, appears to have been faxed on August 1, 2005. At oral argument, Baez also discussed recent medical appointments and medical conditions, as well as new medications she has been instructed to take as a result of an alleged deterioration of her condition. The ALJ's decision here relates to the time frame of approximately October 1, 2001 to May 10, 2005. Both the evidence submitted with Baez's opposition papers and the evidence Baez described at oral argument, relate to a time after May 10, 2005. Such evidence of deterioration or change in one's condition subsequent to the ALJ's determination does not support remand. "The appropriate course is to file a new claim. Denial of remand in itself will not prejudice a new claim." *Sailing v. Secretary of HHS*, No. 90-5156, 1990 U.S. App. LEXIS 19782 (6th Cir. Nov. 6, 1990) (internal citation omitted); *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985) ("The subsequent deterioration . . . may form the basis for a new claim."); *Nevils v. Barnhart*, No. 05-2012 (WL), 2005 U.S. Dist. LEXIS 33771, at *9 (D. Kan. Dec. 16, 2005) ("[T]he general rule that if a claimant submits new evidence based on testing done after an ALJ's decision is issued, the claimant must file a new claim rather than ask the court to engage in the impossible task of guessing whether the new evidence undermines the ALJ's original decision."). Accordingly, this Court cannot consider the medical examinations discussed by Baez that took place after the ALJ's determination. Rather, the appropriate course of action is for Baez to file a new claim relating to the period after the ALJ's determination.

After having reviewed the record, the Court concludes that the ALJ's determination that Baez was not disabled for the period up to May 10, 2005, comported with applicable legal standards and was supported by substantial evidence.

III. CONCLUSION

For the reasons stated above, defendant's motion for judgment on the pleadings is GRANTED. The Clerk of the Court shall

enter judgment accordingly and close this case.

   SO ORDERED.


   _____
   JOSEPH F. BIANCO
   United States District Judge

Dated: September 19, 2006
Central Islip, NY

     * * *

 Plaintiff appeared *pro se*. Defendant is represented by Assistant United States Attorney Kelly Horan, Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, One Pierrepont Plaza, 14th Floor, Brooklyn, New York 11201.